NEXT CASE ARGUMENT KATHRYN ROBERNA, DEVA CONCEPTS LLC Good morning, Your Honors. May I please look forward? Hang on just one second. Okay. All right. Okay, Ms. Davis, go ahead. Thank you. My name is Amy Davis, and I represent appellant Kathryn Roberna in an appeal that involves Ms. Roberna's efforts to opt out of a class action after expiration of the opt-out period. Now, the ruling in this case is subject to an abusive discretion standard. However, a district court abuses its discretion when it misstates or misapplies the law, and that happened in two instances in this case. First, the district court found that the attorney's conduct in the case could not be sufficient to find excusable neglect. And second, the court found that third of the pioneer factors, the factors that are used to evaluate excusable neglect, should be given greater weight. Finally, I'll talk about both of those errors in turn, but I'd also like to talk about why the court should reverse and remand the case. Turning to the first error in misstating the law, the district court specifically stated in his opinion that an attorney's mistake, though unfortunate, is not grounds for finding excusable neglect. Well, doesn't that depend on whether the attorney's mistake was excusable? In other words, I think what the court was saying, and you'll have to explain to me why that's wrong if it is what he was saying, I thought what the district court was saying is that we attribute the attorney's conduct to the client. And in that sense, to say my lawyer screwed up is not excusable neglect. Is that how you interpret it, or do you interpret it differently? I interpret it differently, Your Honor. The district court agreed that Ms. Robaina was completely blameless in this. Yes, but the district court didn't think that you were completely blameless. True, but what we know from the pioneer case is that the- And the situation here is that you had something like 116 clients, and 108 of them decided to opt out of the class. I can only assume, although I can't ask you what you advised them, that that wouldn't have happened if there weren't some advice from counsel that opting out was the right thing to do. So apart from the question of the loss of the letter, wouldn't it be appropriate to, in the exercise of your responsibility as counsel, to call those other eight people and make sure that they actually made a decision not to opt out rather than that they simply hadn't sent a letter? Oh, absolutely, and we did. We had many communications with all of the plaintiffs. But here, I want to be clear. The pioneer case, one of the central holdings of the pioneer case is that we look to both the attorney's conduct and the client's conduct, and one of the holdings of pioneer is that the attorney's failure to note and follow or comply with the deadline for filing a bankruptcy claim was excusable neglect. So my conduct could be excusable neglect. It could, but that's not how the district court ruled. The district court held that my conduct could not constitute excusable neglect under any circumstance. But why was that? I mean, you submitted a list to the court of the people who were opting out and a package of letters, and at that point, that's the point at which I would think there's some communication with the clients just to make sure that the eight missing people from that list actually intended not to opt out rather than simply hadn't gotten whatever or hadn't acted inadvertently on what they were supposed to advise you. And if that had happened, I assume that Ms. Ravena would have said, What are you talking about? Of course I sent a letter. And then you would have to look for it or get her to send another copy or something of the sort before submitting the list. The problem to me, it seems, is that this is not just a question of the paralegal somehow misfiled the letter. It's that there wasn't follow-up at the appropriate time to make sure that the list was accurate. Well, Your Honor, I'm glad that you asked that question because I do think it misunderstands the mistake that occurred. We had many communications with each of the plaintiffs, offering them our advice and ensuring that we got their input. Do you intend to opt out or not opt out? The error was, as the paralegal who handled the logistics of logging in those letters as they were received, we received the letter from Ms. Ravena. It's undisputed that it was timely received. The problem is that her letter was not logged by the paralegal as she collected those letters and logged them. And as a result, when it came time to pull those letters and put them in a packet to the settlement administrator, her letter was not included. And when it came time for me to reconcile what was in the packet to send to the settlement administrator and what should have been in the packet, the list didn't include her name. And so the error was not revealed. I believed, my paralegal believed, that that list was a list of all the plaintiffs who had, after lots of communication, told us they intended to opt out and had provided a letter, but due to an inadvertent mistake, her name was simply left off that log. So, unfortunately, I was in a position where I reconciled the list of everyone I believed to have provided a letter against what was in the packet. I simply was not able to identify the mistake. And that is one of the reasons that I think this court can reverse and render in this particular case. We have Pioneer and its Second Circuit progeny, and this court is, of course, looking to see the bigger picture, the line that is drawn from those cases and the policy behind it. And what we find is that there is a stark distinction between when a lawyer either is ignorant of a deadline or misunderstands a rule. And that's not what happened here. What happened here is that counsel understood what the deadline was. In fact, she met the deadline, indisputably, for 108 other people. The problem was that she believed she had complied for every client who had sent in letters, including Ms. Romina. But her belief was mistaken. So I think that we can compare this to the Pioneer case in particular, where the court found that the lawyer's failure to comply with the deadline to submit a bankruptcy claim was excusable because there was something that made— at least not alone—it was a failure or an ambiguity in the process, the notice process. It wasn't conspicuous. It wasn't accompanied by an explanation of the consequence of failing to timely submit the claim. And here, again, we have a situation where we have an informed lawyer, a lawyer who knows the deadline, but by an honest mistake believes she had complied. And we have other reasons that this case is very similar to the Pioneer case. Like in Pioneer, there's no prejudice to the defendant. There was no disruption in the judicial proceeding, either this class-action case or the personal injury case in which Ms. Romina is implanted. And there was no bad faith. And for those reasons, I believe that this court cannot only—must reverse because the court simply misstated the law and misapplied the law, but may also render an opinion. Let me turn now to what I believe is the second misstatement and misapplication of the law. And that is the district court's single-minded focus on the third factor, the third Pioneer factor. So let me just jump in, and I'll give you another minute or so to address that. That is actually something I'm concerned about. You characterize the district court as having only considered the one factor, but in fact the district court in the decision does actually reference the other factors and says that, you know, the delay in catching the mistake that weighed against it, the other two factors were nominally more favorable to the plaintiff. And so it's clear that the district court didn't only consider one factor. And the factor that it considered, I mean, it did say that that seems to be the most important one, that it's not—that the court didn't find it to be excusable neglect, but the factors—all the factors were considered, weren't they? Well, I do think, to be fair, that the district court did analyze each of the factors, but it's undisputable that the district court—and this is exactly how district courts stated the law— says the four Pioneer factors do not carry equal weight. The excuse given for the plaintiff's filing— Didn't we say that? I mean, isn't that—isn't the court citing directly Second Circuit precedent that the third factor is the most important? He's citing the Sillivich case, and the Sillivich case simply doesn't apply here. It's applying the excusable neglect standard in a very different context, in the context of the federal rule of appellate procedure 4AB, which allows a party to seek leave to—then the time to file a notice of appeal. But the reason it's so different is because there is a 30-day deadline to file such a motion. It has to be filed within 30 days of that or the original deadline. And because of that, the Second Circuit, this court, specifically stated in its opinion that the delay in those cases is always going to be negligible, that because of the 30-day requirement, there's almost never going to be opportunity for bad faith, and there will be very little prejudice. And for those reasons, the court understandably said in the Sillivich case specifically that the focus should be on that third factor. I mean, that just makes sense. There's no need to spend a lot of time analyzing factors that are simply not in play. But, of course, that 30-day requirement is not applicable to Rule 6 and isn't applicable in this case. And the importance of the other factors that the district court plainly did not give much weight to should not be overlooked. They mean that we're dealing with an honest mistake, the correction of which harms no one. And I see that I am running out of time, so I'll just give a brief conclusion, which is to say that this is exactly the sort of case envisioned by Rule 6. The party is blameless. The counsel knew and understood and believed that she had complied with the rules. This is not a situation where we should toe the line in order to incentivize lawyers to know and follow the rules. The purpose, that purpose which is an important purpose, and which I do think is the purpose when we look at Pioneer and its progeny, is underlying those rulings. But that purpose is not served here because counsel knew the rules and believed she had followed them. So we have a situation where there is no prejudice, there's no disruption to the judicial proceedings, and no bad faith. This is just an honest mistake that was made by an informed and well-intentioned lawyer, the correction of which harms no one, but the denial leaves plaintiff with nothing. And absent a reversal of the opinion below, we are steering the law away from very well-settled and sound and binding Supreme Court precedent. And for those reasons, Your Honor, we believe that the ruling should be reversed and rendered. Thank you. All right, thank you, Ms. Davis. Good morning, Your Honors. May it please the Court. My name is Jacqueline DeMaze. I'm here on behalf of Appellee Diva Concepts. Ms. Robaina's position is based on a few key misstatements of the law and how Judge Woods applied it, and I think I want to take this opportunity to clarify exactly what it was Judge Woods held and what Second Circuit precedent is in this case. First, Ms. Robaina suggests that Judge Woods didn't appropriately consider that it was for counsel's error versus Ms. Robaina's error that led to the untimely opt-out. This issue was attacked head-on in Pioneer, where the court clarified that clients must be held accountable for their attorneys' errors, and that's what we have here, as unfortunate as it may be, as Judge Woods recognized. I think almost all, at least a majority of the cases cited in this appeal, involve some attorney inadvertence or attorney error, which is what we have here. The key distinguishing factor is the standard is excusable neglect. We know we have the neglect part of that standard. What we don't have here is really the excuse. What is the reason for counsel's error? In some of the other cases cited in this appeal, we have confusion of the rules, confusion in the record about what the deadline might be. Here we have no real explanation as to why there was this untimely opt-out, other than just the neglect, which we already know we have. I think something that's glaringly missing in this record is a valid excuse for that neglect that would justify allowing the untimely opt-out. Ms. Rubina's counsel makes it sound as if Judge Woods held that a counsel's inadvertence or error can never be a reason to allow an untimely opt-out, and that's not what he held. He held, in this case, it was insufficient to provide an excuse for the neglect. In that sense, Judge Woods applied Second Circuit precedent exactly as it's been held in Pioneer and its progeny. I want to address opposing counsel's description of Pioneer. I think she misunderstands that holding. The key distinguishing factor in Pioneer is that there was an excuse in that case, and Pioneer provides a good roadmap for the cases in which excusable neglect can be found. In that case, the court held that there was an unusual form of notice that justified a finding of excusable neglect. So there was a basis for finding counsel's neglect to be excusable. Here, counsel doesn't point to a rule, any sort of confusion in the record, really anything that excuses what otherwise is just straightforward neglect. And second, Ms. Rubena's counsel focuses on the third factor and why she takes the position that the court placed undue weight on that factor. As Your Honors have recognized, Second Circuit precedent lays that path forward. It's been held time and time again that the third factor is the most compelling and persuasive factor in this analysis. It has been applied in different contexts, Rule 4, Rule 6, Rule 6db, but there's no basis for distinguishing between those rules. The third factor is the most compelling because I think it gets to the heart of that excusable portion of the standard. And I think really just to sort of sum up, there might be this temptation to ask, well, what's the harm in this case in letting one more plaintiff come forward where we already have 100-plus plaintiffs? And I think the court addressed that head-on in Ray Payne-Weber, where the court said in the class action context that orders establishing opt-out procedures and deadlines should be given full effect in order to foster strong judicial policy in favor of settlements, especially in the class action context. So there's the principle basis for- But there's not going to be a settlement with respect to the 108. So the question is, what is the strong interest of the justice system in there being only 108 opt-outs as opposed to 109? Well, there's the principle of finality that we set the class with an understanding of what that opt-out list- Yes, but any time you're looking at excusable neglect as an issue, you are recognizing that finality is not an absolute consideration. Yeah, and I think that's considered in the factors, the four pioneer factors. And the court held that the prejudice to defendants was minimal but not existent. The cases that are going forward are individual claims of personal injury that involve significant issues of causation. You're tempted to say, oh, there's 100, so what's 101? But each case is significant. And as Judge Woods recognized, there's a potential floodgates issue where this case involved significant media attention, significant social media activity. And there's a real concern that if one plaintiff can come forward and say, I was allowed to file a late opt-out, maybe you could too. There's a concern that more plaintiffs could come forward seeking to opt out of the class and pursue an individual. That's always the case any time you allow a late filing on the basis of excusable neglect. Yes, and I think one of the balancing factors in that is the excuse. And that's kind of the door that prevents that floodgate from opening, is that there is an excuse for that one plaintiff to come forward and submit the late opt-out. If you allow it in a case like this where there really isn't that valid excuse, I think that's where the floodgates become more of a concern where anyone could really come forward and try to submit a late opt-out. Thank you. So unless if your Honours have any other questions, that concludes my remarks. All right, thank you, Ms. Stiles. Thank you. So we'll take this case under advisement.